UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------ X    07 Civ. 2933 (SAS)
BASIL FITZPATRICK, SOLE PROPRIETOR, d/b/a/   :
ARTEMIS RECORDS                              :
                                             :
                       Plaintiff,            :
                                             :
     - against -                             :
                                             :
SONY-BMG MUSIC ENTERTAINMENT, INC., RED      :
DISTRIBUTION, INC., SHERIDAN SQUARE          :
ENTERTAINMENT, INC., d/b/a/ ARTEMIS          :
RECORDS, DANNY GOLDBERG, SHERIDAN            :
SQUARE ENTERTAINMENT, LLC d/b/a/ ARTEMIS     :
RECORDS,                                     :
                                             :
                       Defendants,           :
------------------------------------------------------------ X
```

## **INTRODUCTION**

This Opposition to Rule 12(b) Motion to Dismiss is respectfully submitted on behalf of plaintiff, Basil Fitzpatrick Sole Proprietor, d/b/a/ Artemis Records, in opposition to defendants' Motion to Dismiss the Plaintiff's Complaint.

# TABLE OF AUTHORITIES

**Cases**                       **Page(s)**

*Blue Planet Software, Inc. v Games Intern, LLC*
    334 F. Supp.2nd 425 (S.D.N.Y., 2004) .......................................... 4

*Conopco, Inc. Campbell Soup Co.,*
    95 F3d 187 (2nd Cir, 1996)....................................................... 2

*Karlen v. New York University*
    464 F. Supp. 704, 708 (SDNY, 1979)............................................ 3

*Lennon v. Seaman*
    63 F. Supp. 2d 428 (SDNY, 1999) ................................................ 3

*Onanuga v Pfizer*
    369 F.Supp 2nd 491 (S.D.N.Y., 2005) ........................................... 4

*Patsy's Brand, Inc. v. I.O.B. Realty, Inc.*
    317 F.3d 209, 217 (2nd Cir., 2003)................................................ 3

*Red Ball Interior Demolition Corp. v Palmadessa*
    947 F. Supp. 116 (S.D.N.Y., 1996)............................................... 6

*Sinco, Inc. v Metro-North Commuter R Co.,*
    133 F.Supp 2nd 308 (S.D.N.Y., 2001)............................................ 6

*Tri-Star Pictures, Inc., v. Leisure Time Prods. B.V.*
    17 F3d 38, 44 (2nd Cir, 1994) ..................................................... 2

*United States v ITT Continental Baking Co.*
    420 US 223, 238; 95 S.Ct. 926 (1975) .......................................... 6

## OPPOSITION TO RULE 12(b) MOTION TO DISMISS
## BACKGROUND

The facts in this case reveal a convoluted dispute over the rights to the name "Artemis" Records stretching back to 1999. The initial stage of the dispute constituted a first lawsuit and a (potential) resolution, pounded out in chambers, whereby the parties to this action "settled" the dispute over the trade name "Artemis" by agreeing that Sheridan Square and Danny Goldberg would pay plaintiff herein the substantial sum of $125,000 as consideration for plaintiff to drop his use of Artemis Records.

Following the settlement, plaintiff duly ceased his use of the Artemis Records trade name. Defendants, however, refused and failed to pay plaintiff the settlement amount.

In 2004, DANNY GOLDBERG, filed for the Artemis Record's trademark with the Patent and Trademark Office (PTO). Plaintiff, not having been paid, challenged his right to use the Artemis Records trademark, and filed his own "counter application". The two sides fought it out in the PTO, each claiming the right to the Artemis Record's trade name. SHERIDAN SQUARE was "associated" with DANNY GOLDBERG and had full knowledge of the ongoing dispute, i.e., litigation, in the patent and trademark office. After three (3) years of contentious claims, DANNY GOLDBERG's application for registration was <u>denied</u>, and plaintiff was successful in establishing his primary right to the trademark. Plaintiff's mark and registration was issued on August 7, 2007, two (2) months ago. Crucially, the parties have engaged in an active and ongoing dispute over this trademark, at the PTO, since 2004.

Plaintiff has not been sitting on his rights. He filed an initial suit and used best efforts to

resolve it. It was only on defendant's default and failure to pay plaintiff the moneys promised under the settlement agreement that plaintiff reasserted his claims against Defendants. Moreover, it is obvious defendant's maneuvered plaintiff into the settlement agreement in the first action by falsely promising a financial resolution which never occurred. Defendants concede they have the burden to show why laches should apply in the instant case. Even were the burden on plaintiff, defendants are not still not entitled to prevail based on the failure to show 'prejudice.'

As set forth in *Conopco, Inc. Campbell Soup Co.,* ((2nd Cir, 1996) 95 F3d 187), "...In order to prevail on the affirmative defense of laches, a defendant must prove that it has been prejudiced by the plaintiffs unreasonable delay in bringing the action. *Tri-Star Pictures, Inc., v. Leisure Time Prods. B.V.* (2nd Cir, 1994) 17 F3d 38, 44; cites omitted".

## LACHES IS INAPPLICABLE TO THE CASE AT BAR

Laches as an equitable defense in the stead of a statute of limitations defense. As set forth in *Conopco* and *Tri-Star, supra,* the occurrence of 'prejudice' is an integral element of the Laches claim, requiring defendants to show, and prove, that they have changed their position in (reasonable) reliance on the plaintiff's inaction. This necessary element in a Laches defense is not present here.

Laches typically lies in a situation where one party casually disregards its ownership rights and a second party avails itself of those rights without serious objection. Here, on the other hand, these parties engaged in one action, followed by a failed settlement, followed by a bitter and protracted fight in the PTO. Under these circumstances, defendants can hardly be said to have been caught unaware. They have, instead, been active participants in each of these disputes, have

known of - and fought over - plaintiff's claims, and have elected to pursue their own personal financial objectives in callous disregard for those claims. LACHES is, moreover, a remedy grounded in equity. The maxim '*he who seeks equity, must do equity*' is applicable to these parties.

This litigation was precipitated by defendants' sham settlement and failure to pay plaintiff. The calculated act is itself inequitable and precludes equitable considerations in favor of defendants.

Finally, it is well established law that a claim of defense of laches is generally not appropriate to raise in a 12(b) motion to dismiss. *Karlen v. New York University* 464 F. Supp. 704, 708 (SDNY, 1979). Only where the defense is "absolute" and clear on the face of the complaint, and where no extrinsic facts or evidence are in dispute (i.e., no "fact finding") can a court grant a rule 12(b) motion for dismissal based on the laches defense. *Lennon v. Seaman* ((SDNY, 1999) 63 F. Supp. 2d 428),[ denying a 12(b) motion to dismiss on a laches claim, finding that it was not appropriate to engage in factual discovery in such a motion.] The case at bar presents unique factual circumstances surrounding the first lawsuit and attempted settlement. Those issues deserve a hearing on the merits.

Likewise, when the parties were still actively engage in a dispute at the PTO to establish (or, properly, re-establish) which had the right to the Artemis Record Grand, the secondary user (defendants herein) cannot be said to have acquired the mark through their 'adverse' use; *Patsy's Brand, Inc. v. I.O.B. Realty, Inc.* ((2nd Cir., 2003) 317 F.3d 209, 217).

## **ESTOPPEL**

Like Laches, Estoppel is an 'equitable' remedy. Under New York law, estoppel requires three elements on the party estopped; (1) conduct which is calculated to convey impression that facts are otherwise than, and inconsistent with, those which party subsequently attempts to assert, (2) intent that such conduct will be acted upon, and (3) actual or constructive knowledge of true facts. *Onanuga v Pfizer* (S.D.N.Y., 2005) 369 F.Supp 2nd 491. Likewise, a requirement of a ' (1) material misrepresentation, (2) reasonable reliance and (3) detriment' also constitute an effective estoppel. *Blue Planet Software, Inc. v Games Intern, LLC* (S.D.N.Y., 2004) 334 F. Supp.2nd 425; Applied in the context of this action, to arrive at an estoppel, either defendants would have to prove that plaintiff stated they would relinquish their trademark rights 'whether or not' they were paid the settlement moneys (or) plaintiffs 'led' defendants to believe that they would present no further claims, ie, that they unilaterally abandoned their trademark claims. Clearly that is not the case here as both plaintiff and defendant engaged in a bitter dispute over those claims in the PTO. As stated in plaintiff's opposition in re the LACHES claim, defendant themselves have unclean hands. Defendants induced plaintiff to enter the 2000 settlement agreement to conclude the first lawsuit. That agreement was signed in June of 2000, and never funded. Plaintiff received no advantage, nor any consideration for the rights he purportedly gave up in favor of defendants, and cannot be held to be 'estoppel' in the face of defendants' default.

Defendants are incorrect in their application of 'estoppel' principals to the case at bar. Defendants sought to 'acquire' all of plaintiff's rights without any intent to tender to plaintiff the payment promised for those rights. Defendants in fact, gave up nothing and had no right to rely

on plaintiff Fitzpatrick's agreement to surrender the trademark. The only consideration for that transfer was the promise to pay Fitzpatrick $125,000 - which promise defendants never performed.

More importantly, after the breakdown of the original agreement, plaintiff herein re-established the trademark in a contested PTO action. Plaintiff was not precluded from doing so because of the breach by defendants herein as to the original '2000' settlement agreement.

Defendants themselves had no 'charge in position' in 'reliance' on the plaintiff's promise to surrender his trademark rights. Defendants cannot establish 'reasonable reliance', a necessary element of an estoppel, in that they could not reasonably rely on plaintiff to forego his rights in the face of their default. This obvious defect in plaintiff's estoppel claim is compounded by the fact that plaintiff's 'promise' itself was a conditional promise to surrender his rights in exchange for payment. Clearly, without the bargained for 'consideration' of payment, the surrender agreement could not be held to be effective. Defendants could have, moreover, sought declaratory relief when plaintiff re-established his trademark (in the face of defendants' position) at the PTO. Instead, it was defendants who conceded plaintiff's rights to the trademark at the PTO.

## SETTLEMENT AGREEMENT

In settlement of the 1999 lawsuit, plaintiff made a conditional agreement to surrender his trademark rights in exchange for the bargained for consideration of $125,000. Plaintiff kept up his part of the bargain and relinquished his trademark rights. Defendants then engaged in the pre-text of creating a grossly one-sided settlement agreement and refused to pay plaintiff when he

would not sign it (and after he had surrendered his rights.).

It is well settled contract law that a party cannot enforce an agreement that they themselves are in breach of and under which they have refused to tender performance. Under New York law a party may thus avoid his "obligations" under a contract on a showing of prejudice and material breach. *Red Ball Interior Demolition Corp. v Palmadessa* (S.D.N.Y., 1996) 947 F. Supp. 116, confirmed 107 F 3rd 4. Moreover, in the case at bar the very object of the purported settlement contract was defeated by defendants when they refused to pay the 'consideration' offered for plaintiffs prospective relinquishment of his trademark. *Sinco, Inc. v Metro-North Commuter R Co.*, (S.D.N.Y., 2001) 133 F.Supp 2nd 308. A settlement agreement is a 'contract' and these contractual principals are applicable in determining whether a settlement agreement-judgment may be interpreted so as to allow (or preclude) future claims on the same subject matter. *United States v ITT Continental Baking Co.* (1975) 420 US 223, 238; 95 S.Ct. 926. The settlement was incomplete and never finalized. Defendants, not plaintiffs, breached the agreement and are, therefore, precluded from enforcing its terms.

Moreover, it is improper to 'litigate' the contract on a 12(b) motion. Plaintiff clearly has the ability to state contention facts which, if proved, may dispose of the 'defense' of a contractual settlement.

## IN CONCLUSION

Laches is disfavored as a 'remedy' under a 12(b) motion for dismissal and will only lie where there are no factual issues in dispute and no possibility of a factual showing negating its various elements. Plaintiff has shown herein that LACHES is inappropriate given the

circumstances of the case at bar, and with regards to these particular defendants. At the very least, there are no equitable grounds to support a finding of a changed position based on an unreasonable delay. Plaintiff further contends that LACHES is not a "formulitic" issue and should only be applied in the most obvious and 'extreme' cases. The case at bar not fall in this category.

The extraordinary circumstance of the first lawsuit, defendants' failure to fund any part of the settlement and the subsequent battle in the PTO over the trademark (wherein plaintiff prevailed) establish plaintiff's right to proceed forward in this lawsuit.

Like Laches, there is no basis for an argument in ESTOPPEL, either by conduct or promise, that could preclude plaintiff from maintaining this action or provide a basis for a rule 12(b) motion. Contract, and the 'enforcement' of an agreement in settlement of previous litigation which the moving parties refused to fund is not only unavailing, it is also unconscionable.

Dated: New York, New York

    October 1, 2007

                          JOSEPH & SMARGIASSI

                          By: _S/ John Smargiassi_
                          John Smargiassi, Esq. (JS 3041)
                          Attorneys for Basil Fitzpatrick, Sole Proprietor,
                          d/b/a Artemis Records
                              Two Rector Street, 21st Floor
                          New York, NY 1006
                          Tel: (212) 625-9949
                          Fax: (212) 625-9193

By: *S/ STEVEN B. LEHAT*
Steven B. Lehat, Esq. (CA 92798)
Attorneys for Basil Fitzpatrick, Sole Proprietor,
d/b/a Artemis Records
895 Dove Street, Third Floor
Newport Beach, California 92660
Tel: (949) 786-6461
Fax: (323) 935-0410

## CERTIFICATE OF SERVICE

I, Jasmine Vasquez, hereby certify that on October 1, 2007, I caused a true and correct copy of the foregoing OPPOSITION TO RULE 12(b) MOTION TO DISMISS to be served upon counsel for defendants, via first-class mail, addressed as follows:

>MEIER, FRANZINO & SCHER, LLP
>Steven K. Meier (SKM 1609)
>Attorneys for Defendants
>Sheridan Square Entertainment, Inc., and
>Sheridan Square Entertainment, LLC.
>570 Lexington Avenue, 26th Floor
>New York, New York 10022
>(212) 759-9770

>Micahel Mervis, Esq.
>PROSKAUER ROSE LLP
>Attorneys for Defendant
>Daniel Goldberg
>1585 Broadway
>New York, New York 10036-8299
>(212) 969-2900

Dated: New York, New York
October 1, 2007

Signed: _____