USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/8/08

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X
                                                       :

BASIL FITZPATRICK, SOLE           :
PROPRIETOR, d/b/a ARTEMIS
RECORDS,                                      :

                      Plaintiff,                     :
                                                   :      **OPINION AND ORDER**

            - against -                   :
                                                   :      07 Civ. 2933 (SAS)

SONY-BMG MUSIC                        :
ENTERTAINMENT, INC., RED        :
DISTRIBUTION, INC., SHERIDAN    :
SQUARE ENTERTAINMENT, INC.     :
d/b/a ARTEMIS RECORDS, and        :
DANNY GOLDBERG, SHERIDAN     :
SQUARE ENTERTAINMENT, LLC     :
d/b/a ARTEMIS RECORDS,             :
                                                   :
                      Defendants.     :
------------------------------------------------------- X
SHIRA A. SCHEINDLIN, U.S.D.J.:

## I.     INTRODUCTION

        Basil Fitzpatrick, sole proprietor of Artemis Records, brings suit under section 1125 of title 15 of the United States Code (the "Lanham Act"), against SONY BMG Music Entertainment and Red Distribution, LLC,[1] Danny

---

[1] SONY BMG Music Entertainment and Red Distribution, LLC are sued incorrectly herein as "Sony-BMG Music Entertainment, Inc." and "Red Distribution, Inc." I have already dismissed this action against these defendants. *See Fitzpatrick v. Sony-BMG Music Entertainment, Inc.*, No. 07 Civ. 2933, 2007

-1-

Goldberg, and Sheridan Square Entertainment, Inc. and Sheridan Square Entertainment, LLC (collectively, the "SSE Defendants").[2] Fitzpatrick alleges that the SSE Defendants infringed on his common law intellectual property rights in the trademark, "ARTEMIS RECORDS," by, inter alia, "promoting the false designation of origin and creating reverse confusion."[3] He seeks an award of ten million dollars against the SSE Defendants, as well as punitive damages and other litigation costs.

The SSE Defendants now move to dismiss all claims against them based on the doctrines of laches and estoppel. For the reasons stated below, that motion is denied.

## II. FACTS[4]

Basil Fitzpatrick is the sole proprietor of a music business which engages in "[the solicitation of] bands and artists, product development, performing, producing, recording, distributing promotional materials [and]

---

WL 2398801 (S.D.N.Y. Aug. 15, 2007).

[2] The instant motion is filed on behalf of Sheridan Square Entertainment, Inc. and Sheridan Square Entertainment, LLC only.

[3] Complaint ("Compl.") at 4, ¶ 6.

[4] The following allegations, taken from the Complaint, are accepted as true for purposes of this motion.

-2-

advertising[,]"[5] and operated under the name "ARTEMIS RECORDS."[6] Since 1996, Fitzpatrick has operated a webpage for this business entitled "The Artemis Records Homepage."[7] In June 1999, Fitzpatrick became aware that Danny Goldberg, then CEO of Sheridan Square Entertainment, LLC, was using the name "ARTEMIS RECORDS" for his "new independent label which was in the very early stage of development[,]" and that Goldberg had applied to the Patent and Trademark Office (the "PTO") for a trademark on the name ARTEMIS RECORDS in February 1999.[8] Fitzpatrick and Goldberg disputed which party held the rights to the ARTEMIS RECORDS mark, and the dispute led to litigation, which culminated in the scheduling of a trial before Judge Harold Baer, Jr. of this Court, for June 26, 2000.[9] The parties reached a settlement on the first day of trial.[10]

Under the terms of the settlement, Fitzpatrick agreed to discontinue

---

[5] *Id.* at 2, ¶ 1.

[6] *See id.* at 2, ¶ 5.

[7] *See id.* at 2, ¶ 1.

[8] *Id.* at 2, ¶ 2.

[9] *See id.* at 3-4, ¶¶ 3-6.

[10] *See id.* at 4, ¶ 7.

his use of the ARTEMIS RECORDS name and to allow Goldberg to use the mark.[11] In exchange, Fitzpatrick was to be paid $125,000 in compensation within ten days.[12] Fitzpatrick complied with the settlement agreement and discontinued use of the ARTEMIS RECORDS name, but he never received the agreed-upon compensation from the SSE Defendants.[13] As a result, in July 2000, he petitioned the PTO to revive his ownership of the ARTEMIS RECORDS trademark.[14] He also resumed use of the ARTEMIS RECORDS name on September 15, 2000.[15] The SSE Defendants have made no effort to enforce the terms of the settlement agreement against Fitzpatrick.[16]

On May 23, 2001, the PTO granted Fitzpatrick's Petition to Revive

---

[11] *See id.*

[12] *See id.*

[13] *See id.* at 5-6, ¶¶ 10-11.

[14] *See* 8/2/07 Letter from Basil Fitzpatrick to the Court at 1-2.

[15] *See* Compl. at 6, ¶¶ 11-12.

[16] *See id.* at 6, ¶ 11. In the Complaint, Fitzpatrick miscalculates the time elapsed since the settlement as eight years. The settlement was reached on June 26, 2000. As a result, seven years have elapsed since the date of the settlement agreement. It has been eight years since Fitzpatrick became aware that the SSE Defendants were using the ARTEMIS RECORDS mark in 1999.

-4-

his application for the trademark.[17] On July 13, 2004, however, the PTO registered the ARTEMIS RECORDS mark to Sheridan Square Entertainment, LLC based on Danny Goldberg's earlier application, dated February 9, 1999,[18] which predated Fitzpatrick's re-application for the trademark dated August 5, 1999.[19] Fitzpatrick then instituted proceedings before the Trademark Trial and Appeal Board (the "TTAB") on September 9, 2004 to dispute the SSE Defendants' ownership of the ARTEMIS RECORDS mark.[20] Fitzpatrick testified before the TTAB twice – on June 19 and 28, 2006.[21] Representatives for the SSE Defendants were present on both occasions.[22] The proceedings before the TTAB continued until the SSE Defendants chose to surrender the ARTEMIS RECORDS mark on September 18, 2006, and the PTO finalized the surrender on March 1,

---

[17] *See id.*

[18] *See id.* at 7, ¶ 14. It appears that the trademark was awarded to Danny Goldberg as CEO of Sheridan Square Entertainment, LLC, and he then assigned the entire interest in the trademark to Sheridan Square Entertainment, LLC, which later assigned the interest to Sheridan Square Entertainment, Inc. *See* Trademark Assignment Abstract of Title, Ex. C to Compl.

[19] *See id.*

[20] *See id.* at 9, ¶ 3.

[21] *See id.*

[22] *See id.*

2007.[23] The instant suit was filed on April 12, 2007.

## III. LEGAL STANDARDS

### A. Rule 12(b)(6) – Motion to Dismiss

"Federal Rule of Civil Procedure 8(a)(2) requires . . . 'a short and plain statement of the claim showing that the pleader is entitled to relief.'"[24] When deciding a defendant's motion to dismiss under Rule 12(b)(6), the court must "accept as true all of the factual allegations contained in the complaint"[25] and "draw all reasonable inferences in plaintiff's favor."[26]

Nevertheless, to survive a 12(b)(6) motion to dismiss, the allegations in the complaint must meet the standard of "plausibility."[27] Although the complaint need not provide "detailed factual allegations,"[28] it must "amplify a

---

[23] *See id.* at 9, ¶¶ 3-4.

[24] *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).

[25] *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007).

[26] *Ofori-Tenkorang v. American Int'l Group, Inc.*, 460 F.3d 296, 298 (2d Cir. 2006).

[27] *See Bell Atlantic*, 127 S. Ct. at 1970.

[28] *Id.* at 1964. *Accord ATSI Commc'ns v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 n.2 (2d Cir. 2007) (applying the standard of plausibility outside *Twombly's* anti-trust context).

claim with some factual allegations . . . to render the claim *plausible*."[29] The test is no longer whether there is "no set of facts" that plaintiff could prove "which would entitle him to relief."[30] Rather, the complaint must provide "the grounds upon which [the plaintiff's] claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'"[31] Although the court must take the plaintiff's allegations as true, "the claim may still fail as a matter of law . . . if the claim is not legally feasible."[32] In addition, "bald assertions and conclusions of law will not suffice."[33] However, a pro se plaintiff is entitled to have his pleadings held to "less stringent standards than formal pleadings drafted by

---

[29] *Iqbal v. Hasty*, 490 F.3d 143, 157 (2d Cir. 2007) (emphasis in original) (holding that plaintiff's complaint adequately alleged the personal involvement of the Attorney General because it was plausible that officials of the Department of Justice would be aware of policies concerning individuals arrested after the events of September 11, 2001).

[30] *Bell Atlantic*, 127 S. Ct. at 1969 (quoting *Conley v. Gibson*, 355 U.S. 45-46 (1957)) ("[t]he phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard").

[31] *ATSI Commc'ns*, 493 F.3d at 98 (quoting *Bell Atlantic*, 127 S. Ct. at 1965).

[32] *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 457 F. Supp. 2d 455, 459 (S.D.N.Y. 2006) (citing *Allaire Corp. v. Okumus*, 433 F.3d 248, 250 (2d Cir. 2006)).

[33] *Law Offices of Curtis V. Trinko, LLP v. Bell Atlantic Corp.*, 309 F.3d 71, 74 (2d Cir. 2002) (quotation omitted).

lawyers."[34] Accordingly, a pro se plaintiff's papers should be interpreted "to raise the strongest arguments that they suggest."[35]

**B.    The Doctrine of Laches**

The doctrine of laches is based on the maxim, "*vigilantibus non dormientibus aequitas subvenit*," meaning "equity aids the vigilant, not those who sleep on their rights."[36] It is an equitable defense that "bars a plaintiff's equitable claim where he is guilty of unreasonable and inexcusable delay that has resulted in prejudice to the defendant."[37] "A party asserting the defense of laches must establish that: (1) the plaintiff knew of the defendant's misconduct; (2) the plaintiff inexcusably delayed in taking action; and (3) the defendant was prejudiced by the delay."[38]

"'It is well established that the equitable defense of laches may be

---

[34]    *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

[35]    *McPherson v. Coombe,* 174 F.3d 276, 280 (2d Cir. 1999) (quotation marks and citation omitted). At the time the Complaint was filed, plaintiff was proceeding pro se, and has since retained an attorney who filed a Notice of Appearance on August 29, 2007.

[36]    *Ivani Contracting Corp. v. City of New York*, 103 F.3d 257, 259 (2d Cir. 1997).

[37]    *Ikelionwu v. United States*, 150 F.3d 233, 237 (2d Cir. 1998) (quotation omitted).

[38]    *Id.*

applied to cases brought under the Lanham Act.'"[39] "Although laches is an equitable defense, employed instead of a statutory time-bar, analogous statutes of limitation remain an important determinant in the application of a laches defense."[40] Courts "use the [analogous state] statute of limitations as a *benchmark* to measure the delay period which will create a presumption of a defense of laches."[41]

In evaluating whether the plaintiff's delay in taking action was sufficiently long to invoke laches in a Lanham Act suit, the Second Circuit has held that the six-year statute of limitations applicable to state-law fraud claims in New York is the appropriate measure.[42] The six-year period begins to run once the

---

[39] *United States v. Milstein*, 401 F.3d 53, 63 (2d Cir. 2005) (quoting *Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 193 (2d Cir. 1996)). *See also Gaudreau v. American Promotional Events, Inc.*, 511 F. Supp. 2d 152, 158 (D.D.C. 2007) ("In determining whether a plaintiff asserted his Lanham Act claim in a timely manner, courts apply the equitable doctrine of laches because the Lanham Act does not contain a statute of limitations.") (quotation omitted).

[40] *Conopco*, 95 F.3d at 191.

[41] 6 McCarthy on Trademarks and Unfair Competition § 31:23 (emphasis added). *See also id.* § 31:1 ("[T]ypically in infringement suits, it is laches, not the closest state statute of limitations, that is invoked to determine the availability of both injunctive and monetary relief.").

[42] *See Conopco*, 95 F.3d at 191-92.

plaintiff is aware of the facts underlying its cause of action.[43] "Prior to the running of the [six-year statute of limitations period] there is no presumption of laches and the burden remains on the defendant to prove the defense."[44] If the plaintiff fails to bring suit within the six-year period, a presumption of laches will apply, and "'the burden [will be] on the [plainitiff] to aver and prove the circumstances making it inequitable to apply laches to his case.'"[45]

In general, the defense of laches cannot be raised in a motion to dismiss. Nonetheless, "in certain circumstances, when the defense of laches is clear on the face of the complaint, and where it is clear that the plaintiff can prove no set of facts to avoid the insuperable bar, a court may consider the defense on a motion to dismiss."[46]

### C. The Doctrine of Estoppel

"'Estoppel is a drastic remedy and must be utilized sparingly.'"[47]

---

[43] *See Deere & Co. v. MTD Holdings Inc.*, No. 00 Civ. 5936, 2004 WL 324890, at *18 (S.D.N.Y. Feb. 19, 2004).

[44] *Conopco*, 95 F.3d at 191.

[45] *Id.* (quoting *Leonick v. Jones & Laughlin Steel Corp.*, 258 F.2d 48, 50 (2d Cir. 1958)).

[46] *Lennon v. Seaman*, 63 F. Supp. 2d 428, 439 (S.D.N.Y. 1999).

[47] *Mattis v. Zheng*, No. 05 Civ. 2924, 2006 WL 3155843, at *4 (S.D.N.Y. Oct. 27, 2006) (quoting *Keane Dealer Servs., Inc. v. Harts*, 968 F.

"Equitable estoppel applies in both law and equity to deny a litigant 'the right to plead or prove an otherwise important fact because of something he has done or omitted to do.'"[48] Further, the Second Circuit has repeatedly confirmed that estoppel, like laches, is an equitable defense to claims of intellectual property infringement.[49] "The doctrine of equitable estoppel 'is properly invoked where the enforcement of the rights of one party would work an injustice upon the other party due to the latter's justifiable reliance upon the former's words or conduct.'"[50]

Equitable estoppel requires that: "(1) plaintiff had knowledge of defendant's conduct; (2) plaintiff either (a) intended that defendant rely on plaintiff's acts or omissions or (b) acted or failed to act in such a manner that defendant had a right to believe it was intended to rely on plaintiff's conduct; (3) defendant was ignorant of the true facts; and (4) defendant relied on plaintiff's

---

Supp. 944, 948 (S.D.N.Y. 1997)).

[48] *DeCarlo v. Archie Comic Publ'ns, Inc.*, 127 F. Supp. 2d 497, 509 (S.D.N.Y. 2001) (quoting *Broadcast Music, Inc. v. Hearst/ABC Viacom Ent't Servs.*, 746 F. Supp. 320, 329 (S.D.N.Y. 1990)).

[49] *See ProFitness Physical Therapy Ctr. v. Pro-Fit Orthopedic & Sports Physical Therapy P.C.*, 314 F.3d 62, 66 (2d Cir. 2002) ( "equitable defenses of estoppel by acquiescence and laches"); *King v. Innovation Books, a Div. of Innovative Corp.*, 976 F.2d 824, 828 (2d Cir. 1992).

[50] *Apollo Theater Found., Inc. v. Western Int'l Syndication*, No. 02 Civ. 10037, 2005 WL 1041141, at *17 (S.D.N.Y. May 5, 2005) (quoting *Veltri v. Building Serv. 32B-J Pension Fund*, 393 F.3d 318, 326 (2d Cir. 2004)).

conduct to its detriment."[51]

## IV. DISCUSSION

### A. The Doctrine of Laches

The SSE Defendants assert the doctrine of laches as an affirmative defense to Fitzpatrick's claims.[52] Fitzpatrick alleges that he first learned of the SSE Defendants' use of the ARTEMIS RECORDS mark on June 11, 1999.[53] The SSE Defendants note that this is eight years before Fitzpatrick filed the Complaint, and that "nowhere in the Complaint does plaintiff set forth a reasonable excuse as to why for eight (8) years he did not petition the court to enforce the settlement or assert the claims made herein."[54]

Although a presumption of laches applies because Fitzpatrick failed to file the instant suit within the analogous six-year statute of limitations period, that presumption is rebutted by facts that demonstrate "why the laches defense ought not be applied in [this] case."[55] As set forth above, far from sleeping on his

---

[51] *Decarlo*, 127 F. Supp. at 509.

[52] *See* SSE Defendants' Memorandum of Law in Support of Motion to Dismiss ("SSE Mem.") at 1.

[53] *See* Compl. at 3, ¶ 2.

[54] SSE Mem. at 7.

[55] *Conopco*, 95 F.3d at 191.

rights, Fitzpatrick had been actively engaged in adversarial proceedings in the TTAB against the SSE Defendants from 2004 through 2006. As a result, the SSE Defendants were clearly on notice that Fitzpatrick contested their use of the ARTEMIS RECORDS mark. Numerous courts have recognized that "[t]he filing of an opposition proceeding against an alleged infringer's pending registration will generally constitute a sufficient reason for waiting to file an infringement suit in federal court."[56] Because Fitzpatrick's opposition in the PTO of the SSE Defendants' trademark ownership put them on notice that Fitzpatrick contested

---

[56] 6 McCarthy on Trademarks and Unfair Competition § 31:16. *Accord Citibank, N.A. v. Citytrust*, 644 F. Supp. 1011, 1014 (E.D.N.Y. 1986) ( "[T]he Court is inclined to find that the four years before this action was commenced, during which the opposition proceeding [in the TTAB] was being litigated, should not be considered a period of prejudicial delay in deciding whether plaintiffs have been guilty of laches."). *See also Gaudreau*, 511 F. Supp. 2d at 159 (holding doctrine of laches to be inapplicable where "plaintiffs' opposition of defendant's trademark application before TTAB put defendant on notice that plaintiffs contested its use of the . . . mark . . . .") (citing *Floralife, Inc. v. Floraline Int'l, Inc.*, 633 F.Supp. 108, 113 (N.D. Ill. 1985) ("[A] notice of opposition sufficiently informs the registrant of the trademark holder's objections and renders unreasonable any detriment the registrant may suffer in reliance on the plaintiff's delay in filing suit."); *Finance Co. of America v. BankAmerica Corp.*, 502 F. Supp. 593, 596 (D. Md. 1980) ("[W]here the parties were vigorously involved in disput[e] . . . before the TTAB, and [] plaintiff had put the defendant on notice of its intention to pursue an infringement action upon termination of the administrative proceeding . . . five year delay was neither unreasonable nor inexcusable."); *Alfred Dunhill of London, Inc. v. Kasser Distillers Prods. Corp.*, 350 F. Supp. 1341, 1367 (E.D. Pa. 1972) ("While a successful opposition only acts to prevent registration and not use, as a practical matter, it puts the defendant on notice that, at the least, the plaintiff is not going to 'sleep on its rights,' . . . .")).

-13-

their use of the ARTEMIS RECORDS mark and did not intend to sleep on his rights, the doctrine of laches does not apply.

Moreover, this is not the case where a second infringer had no notice that the plaintiff intended to sue him separately after he resolved his suit against the first infringer.[57] Rather, the TTAB proceedings pitted these same parties against each other – *i.e.*, Fitzpatrick against the SSE Defendants – further weakening the laches defense because Fitzpatrick "was awaiting the outcome of litigation against the present defendant[s], instead of other parties."[58]

Additionally, the doctrine of laches requires that a defendant show prejudice arising from the plaintiff's delay in bringing the action. In their motion, the SSE Defendants claim that, "SSE LLC used [the] 'ARTEMIS RECORDS' mark and continued using it until 2006, believing it had a clear or unencumbered right to said mark."[59] They further allege that they have been prejudiced by

---

[57] *See Jones v. Ceramco, Inc.*, 387 F. Supp. 940, 941 (E.D.N.Y. 1975) (holding that plaintiff was barred by estoppel and laches for failing to give notice to an alleged infringer, against whom no prior proceeding had been brought, for some eleven and one-half years).

[58] *Dunhill*, 350 F. Supp. at 1366 (holding that laches was not established where plaintiff delayed in bringing suit because it attempted to resolve the dispute with defendant in the PTO, and finding that "a favorable opinion in the [PTO] would certainly have been of enormous weight in any subsequent infringement action, if any were necessary").

[59] SSE Mem. at 8.

Fitzpatrick's delay, asserting that they "would not have expanded their resources [in building up their business around the trademark] had plaintiff acted earlier and successfully enforced his claimed rights to that trademark . . . ."[60] The SSE Defendants, however, were actively involved in a dispute over the trademark, and were therefore on notice that any expansion of their business around the disputed trademark was risky.

### B. Estoppel by Laches

The SSE Defendants argue that Fitzpatrick's claim should be estopped because of their "good faith reliance on plaintiff's failure to file suit promptly or take action against SSE LLC."[61] The SSE Defendants' estoppel argument is in fact an estoppel by laches argument. Because the laches and estoppel arguments are identical,[62] for the same reasons that laches does not bar Fitzpatrick's claim, estoppel by laches is also not a bar to relief.

## V. CONCLUSION

For the reasons stated above, the SSE Defendants' motion to dismiss is denied. The Clerk of the Court is directed to close this motion [Docket Entry

---

[60] *Id.*

[61] *Id.* at 9.

[62] *See id.*

-15-

No. 16]. A conference is scheduled for January 16, 2008 at 2:30 p.m.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated: New York, New York
January 8, 2008

## - Appearances -

**For Plaintiff:**

John Smargiassi, Esq.
Joseph & Smargiassi
Two Rector Street
New York, New York 10006
(212) 625-9949

**For Defendants:**

Steven K. Meier, Esq.
Meier Franzino & Scher, LLP
570 Lexington Avenue, 26th Floor
New York, New York 10022
(212) 759-9770