UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

BASIL FITZPATRICK, SOLE
PROPRIETOR d/b/a ARTEMIS
RECORDS,

        Plaintiff,

- against -

SONY-BMG MUSIC ENTERTAINMENT,
INC., RED DISTRIBUTION, INC.,
SHERIDAN SQUARE ENTERTAINMENT,
INC., d/b/a ARTEMIS RECORDS, DANIEL
GOLDBERG, SHERIDAN SQUARE
ENTERTAINMENT, LLC, d/b/a ARTEMIS
RECORDS,

        Defendants.

------------------------------------------------------X

**OPINION AND ORDER**

07 Civ. 2933 (SAS)



**SHIRA A. SCHEINDLIN, U.S.D.J.:**

        Plaintiff Basil Fitzpatrick[1] brought suit under section 1125 of Title 15 of the United States Code (the "Lanham Act") against Sony-BMG Music Entertainment, Inc. and Red Distribution, Inc. (collectively the "Red defendants")[2]

---

[1]     Plaintiff filed his Complaint on April 12, 2007, appearing pro se, but has been represented by counsel since August 29, 2007.

[2]     The Red defendants were dismissed from this lawsuit in an Opinion and Order dated August 15, 2007. *See Fitzpatrick v. Sony-BMG Music Entm't, Inc.*, No. 07 Civ. 2933, 2007 WL 2398801, at *4 (S.D.N.Y. Aug. 15, 2007)

and Sheridan Square Entertainment, LLC ("SSE"), Sheridan Square Entertainment, Inc., and Daniel Goldberg (collectively, the "SSE defendants"). Fitzpatrick alleges that the SSE defendants infringed his common law trademark in the name "*ARTEMIS RECORDS*" by improperly using that name and creating reverse confusion in the marketplace.[3] Goldberg now moves for summary judgment pursuant to Federal Rule of Civil Procedure 56(c) on the ground that he assigned the "*ARTEMIS RECORDS*" trademark to SSE and is therefore not liable for any alleged "indirect infringement."[4] For the reasons that follow, Goldberg's motion is granted and plaintiff's Complaint is dismissed against him.

---

(dismissing the Red defendants pursuant to the doctrine of laches).

[3]   The "reverse confusion" theory of trademark infringement describes the situation where consumers mistakenly conclude that the junior user is, in fact, the source of the senior user's goods or services. *See* 15 U.S.C. § 1125(a).

[4]   Memorandum of Law in Support of Defendant's Motion to Reargue Summary Judgment ("Def. Mem.") at 2. At a conference held on April 17, 2009, I denied the SSE defendants' motion for summary judgment on Fitzpatrick's trademark infringement claim. *See* Transcript of 4/17/09 Conference at 7 (finding "*ARTEMIS RECORDS*" to be an arbitrary mark entitled to trademark protection); *id.* at 9 (holding that "a reasonable jury could conclude that Fitzpatrick's television commercials, newspaper advertisements, CD sales and website sufficiently constituted an active and public attempt to establish a music trade and provided Fitzpatrick with trademark rights at least until 1999."). At a conference held on June 14, 2010, I permitted Goldberg to renew his motion for summary judgment, albeit on a different ground, because his attorney failed to raise the instant "assignment" argument in the SSE defendants' summary judgment motion.

## I. BACKGROUND

### A. Prior Litigation

Basil Fitzpatrick was the sole proprietor of a record company which engaged in, *inter alia*, "soliciting bands and artists, product development, performing, producing, recording, distributing promotional materials as well as advertising."[5] Fitzpatrick's music business operated under the name "ARTEMIS RECORDS."[6] In June of 1999, Fitzpatrick became aware that defendant Daniel Goldberg, then Chief Executive Officer of SSE, applied for a trademark for "*ARTEMIS RECORDS*" in February of 1999, to be used in connection with his "new independent label which was in the very early stage of development . . . ."[7] SSE sued Fitzpatrick in November of 1999,[8] alleging that Fitzpatrick infringed its trademark in the name ARTEMIS RECORDS.[9] The parties settled their dispute,

---

[5] Complaint at 2-3, ¶ 1. References to page numbers are needed in addition to the paragraph numbers because plaintiff repeats the numbering of paragraphs throughout the Complaint.

[6] *See id.* at 2, ¶ 5.

[7] *Id.* at 3, ¶ 2.

[8] *See Sheridan Square Entm't, LLC v. Basil Fitzpatrick*, No. 99 Civ. 11691 (HB) (S.D.N.Y. 1999).

[9] *See id.* at 4, ¶ 6; 6 ¶ 11 ("The lawsuit was initiated solely to have Fitzpatrick withdraw his trademark application . . . .").

however, on June 26, 2000, the first day of trial.[10]

Under the terms of the settlement agreement, Fitzpatrick agreed to discontinue his use of the name ARTEMIS RECORDS.[11] In exchange, Fitzpatrick was to receive $125,000 within ten days.[12] Fitzpatrick complied with the settlement agreement and stopped using the ARTEMIS RECORDS name, but he never received the agreed-upon compensation.[13] Fitzpatrick resumed using the ARTEMIS RECORDS name in September of 2000.[14] Fitzpatrick alleges that since 1999, his endeavors in the music industry have been severely hampered by Goldberg's continued use of the ARTEMIS RECORDS name.[15]

### B. Goldberg's Assignment of the Trademark to SSE

In January of 1999, Goldberg and other individuals founded SSE,[16] an

---

[10] *See id.* at 4, ¶ 7.

[11] *See id.*

[12] *See id.*

[13] *See id.* at 5-6, ¶¶ 10-11.

[14] *See id.* at 6, ¶ 12.

[15] *See id.* at 6-7, ¶¶ 13-14.

[16] On June 30, 2004, Sheridan Square Entertainment, LLC merged into Sheridan Square Entertainment, Inc. *See* Goldberg's Statement of Undisputed Facts ("Def. Stmt") ¶ 2; Plaintiff's Statement of Undisputed Facts ("Pl. Stmt") ¶ 2.

however, on June 26, 2000, the first day of trial.[10]

Under the terms of the settlement agreement, Fitzpatrick agreed to discontinue his use of the name ARTEMIS RECORDS.[11] In exchange, Fitzpatrick was to receive $125,000 within ten days.[12] Fitzpatrick complied with the settlement agreement and stopped using the ARTEMIS RECORDS name, but he never received the agreed-upon compensation.[13] Fitzpatrick resumed using the ARTEMIS RECORDS name in September of 2000.[14] Fitzpatrick alleges that since 1999, his endeavors in the music industry have been severely hampered by Goldberg's continued use of the ARTEMIS RECORDS name.[15]

### B. Goldberg's Assignment of the Trademark to SSE

In January of 1999, Goldberg and other individuals founded SSE,[16] an

---

[10] *See id.* at 4, ¶ 7.

[11] *See id.*

[12] *See id.*

[13] *See id.* at 5-6, ¶¶ 10-11.

[14] *See id.* at 6, ¶ 12.

[15] *See id.* at 6-7, ¶¶ 13-14.

[16] On June 30, 2004, Sheridan Square Entertainment, LLC merged into Sheridan Square Entertainment, Inc. *See* Goldberg's Statement of Undisputed Facts ("Def. Stmt") ¶ 2; Plaintiff's Statement of Undisputed Facts ("Pl. Stmt") ¶ 2.

entertainment and management company whose principal function was to operate a new record label under the name "ARTEMIS RECORDS."[17] On February 9, 1999, Goldberg filed an intent-to-use trademark application, Serial Number 75/637,163, for the mark "*ARTEMIS RECORDS*."[18] On June 8, 1999, Goldberg assigned his entire interest in the "*ARTEMIS RECORDS*" trademark to SSE.[19] In September of 1999, SSE first began using the name "ARTEMIS RECORDS" in commerce.[20] On September 15, 2006, SSE surrendered its Registration for the

---

[17] *See* Def. Stmt ¶ 5; Pl. Stmt ¶ 5.

[18] *See* Pl. Stmt ¶ 6. *See also* Drawing Page, Ex. A to the 7/9/10 Affidavit of Steven Bruce Lehat ("Lehat Aff."), plaintiff's attorney (listing Danny Goldberg as the Applicant for an Intent-to-Use Application for the "*ARTEMIS RECORDS*" mark, to be used in connection with "phonograph records, prerecorded audio and video cassettes, prerecorded audio and video compact disks, and prerecorded digital audio and video cassettes featuring entertainment in the nature of music and music videos").

[19] *See* Def. Stmt ¶ 8. *See also* Trademark Assignment Abstract of Title, Assignment: 1, Ex. F to the 6/24/10 Affidavit of Tinamarie Franzoni ("Franzoni Aff."), defendant's attorney. Plaintiff denies this allegation, arguing that the "Trademark office record just shows a naked illegal assignment in-gross" and that Goldberg's liability "depends on his failure to assign this trademark application to SSE . . . ." Plaintiff Basil Fitzpatrick's Admission or Denial ("Admission or Denial") ¶ 8. The validity of Goldberg's assignment of the "*ARTEMIS RECORDS*" mark to SSE is at the heart of the instant motion. *See infra* Part III.A.

[20] *See* Def. Stmt ¶ 9. *See also* Amendment to Allege Use Under 37 C.F.R. 2.76, Ex. A to the Lehat Aff. (stating that "[t]he mark was first used on the above identified goods at least as early as September, 1999; was first used in commerce at least as early as September, 1999; and is now in use in such commerce"); and Notice of Acceptance of Amendment to Use, dated August 26,

"*ARTEMIS RECORDS*" trademark, Registration Number 2,861,839, and thereby canceled the mark.[21] On March 6, 2009, a secured creditor of SSE announced the seizure and public sale of SSE's assets at auction.[22] The public sale took place on March 16, 2009.[23] The "*ARTEMIS RECORDS*" trademark was excluded from this sale.[24]

## II.   LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[25] "'An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. A fact is material if it might affect

---

2003, Ex. A to the Lehat Aff. (listing SSE as the owner of the "*ARTEMIS RECORDS*" mark).

[21]   *See* Def. Stmt ¶ 11. *See also* Surrender of Trademark Registration, Ex. E to the Franzoni Aff.

[22]   *See* Def. Stmt ¶ 12; Pl. Stmt ¶ 9.

[23]   *See id.*

[24]   *See* Pl. Stmt ¶ 9. *See also* Schedule B to Secured Party General Conveyance and Bill of Sale, Ex. B to the Lehat Aff. (excluding from sale "[a]ny common law or other rights in and to the trademarks 'Artemis' and 'Artemis Records'").

[25]   Fed. R. Civ. P. 56(c).

the outcome of the suit under the governing law.'"[26] "[T]he burden of demonstrating that no material fact exists lies with the moving party . . . ."[27]

To defeat a motion for summary judgment, the non-moving party must raise a genuine issue of material fact.[28] The non-moving party must do more than show that there is "'some metaphysical doubt as to the material facts,'"[29] and it "'may not rely on conclusory allegations or unsubstantiated speculation.'"[30] However, "'all that is required [from a non-moving party] is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'"[31]

---

[26]  *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009) (quoting *Roe v. City of Waterbury*, 542 F.3d 31, 34 (2d Cir. 2008)).

[27]  *Miner v. Clinton County, N.Y.*, 541 F.3d 464, 471 (2d Cir. 2008) (citing *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007)).

[28]  *See id.*

[29]  *Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2007) (quoting *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

[30]  *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (quoting *Fujitsu Ltd. v. Federal Express Corp.*, 247 F.3d 423, 428 (2d Cir. 2001)).

[31]  *Kessler v. Westchester County Dep't of Soc. Servs.*, 461 F.3d 199, 206 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986)).

In determining whether a genuine issue of material fact exists, the court must "constru[e] the evidence in the light most favorable to the non-moving party and draw all reasonable inferences" in that party's favor.[32] However, "'only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment.'"[33] "'Credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment.'"[34] Summary judgment is therefore "appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law."[35]

## III. DISCUSSION

### A. Goldberg's Assignment of the Trademark to SSE Was Not an Unlawful Assignment In-Gross

Plaintiff does not dispute that an assignor is not liable for trademark infringement where there is a valid assignment of a trademark from assignor to

---

[32] *Sledge v. Kooi*, 564 F.3d 105, 108 (2d Cir. 2009) (citing *Anderson*, 477 U.S. at 247-50, 255).

[33] *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 582 F.3d 244, 264 (2d Cir. 2009) (quoting *Raskin v. Wyatt Co.*, 125 F.3d 55, 65 (2d Cir. 1997)).

[34] *McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (quoting *Fischl v. Armitage*, 128 F.3d 50, 55 (2d Cir. 1997)).

[35] *Pyke v. Cuomo*, 567 F.3d 74, 76 (2d Cir. 2009).

assignee. Nor does plaintiff dispute that Goldberg, as an individual, never used the trademark "*ARTEMIS RECORDS*." Rather, plaintiff argues that the assignment from Goldberg to SSE was a prohibited "assignment in gross."[36] Plaintiff further argues that because the assignment was unlawful and without legal effect, Goldberg is legally responsible for SSE's infringing activity. In making this argument, plaintiff overlooks the "existing business" exception to the general rule prohibiting the assignment of Intent to Use ("ITU") applications.[37]

"A trade name or mark is merely a symbol of goodwill; it has no independent significance apart from the goodwill it symbolizes."[38] Accordingly, where a trademark is assigned "in gross," without its accompanying goodwill, the assignment is invalid.[39] The purpose of the assignment in gross rule is to prevent the trafficking of trademarks. As stated by the Second Circuit: "Use of the mark

---

[36] "A sale of a trade name or mark divorced from its goodwill is characterized as an 'assignment in gross.'" *Marshak v. Green*, 746 F.2d 927, 929 (2d Cir. 1984).

[37] *See* 15 U.S.C. § 1060 (prohibiting, in general, assignment of ITU applications before the mark is used in commerce "except for an assignment to a successor to the business of the applicant, or portion thereof, to which the mark pertains, if that business is ongoing and existing").

[38] *Marshak*, 746 F.2d at 929.

[39] *See Clark & Freeman Corp. v. Heartland Co. Ltd.*, 811 F. Supp. 137, 139 (S.D.N.Y. 1993).

by the assignee in connection with a different goodwill and different product would result in a fraud on the purchasing public who reasonably assume that the mark signifies the same thing, whether used by one person or another."[40] The exception to the rule was addressed in *Dial-a-Mattress Operating Corp. v. Mattress Madness, Inc.*, where the court stated:

> The rule against assignments in gross is an important tool for protecting consumer expectations when buying goods or services by reference to its associated trademark or service mark. *Marshak*, 746 F.2d at 929. The rule is not, however, intended to be a mechanistic tool for invalidating assignments which do not satisfy a stereo-typed set of formalities. *Syntex Laboratories, Inc. v. Norwich Pharmacal Co.*, 315 F. Supp. 45, 54 (S.D.N.Y. 1970), *aff'd*, 437 F.2d 566 (2d Cir. 1971). Although courts historically have looked for a transfer of the assets embraced by the trademark to evidence the passage of good will, a transfer of assets is not essential to consummate an assignment of the name. *See Defiance Button Machine Co. v. C & C Metal Products Corp.*, 759 F.2d 1053, 1059-60 (2d Cir.), *cert. denied*, 474 U.S. 844 (1985); *Money Store v. Harriscorp Finance, Inc.*, 689 F.2d 666, 677 (7th Cir. 1982); *Raufast S.A. v. Kicker's Pizzazz, Ltd.*, 208 U.S.P.Q. 699, 702, 1980 WL 30295 (E.D.N.Y. 1980). Particularly when the mark refers to a business that sells the trademarked goods of others, the concomitant passage of assets or inventory is unnecessary since it is the intangible service and not the tangible product that is the subject matter of the trade name or service mark. *Visa, U.S.A., Inc. v. Birmingham Trust, Nat. Bank*, 696 F.2d 1371, 1374-76

---

[40] *Marshak*, 746 F.2d at 929. *Accord Pepsico, Inc. v. Grapette Co.*, 416 F.2d 285, 289 (8th Cir. 1969).

(Fed. Cir. 1982), *cert. denied*, 464 U.S. 826 (1983); *Money Store*, 689 F.2d at 678. Consequently, rather than looking for some formalistic passage of assets, the test is simply whether the transaction is such that the assignee can "go on in real continuity with the past." *Merry Hull & Co. v. Hi-Line Co.*, 243 F. Supp. 45, 51-52 (S.D.N.Y. 1965). *See Defiance Button*, 759 F.2d at 1059; *Bambu Sales, Inc. v. Sultana Crackers, Inc.*, 683 F. Supp. 899, 904-05 (E.D.N.Y. 1988).[41]

Admittedly, at the time of assignment, Goldberg had no physical assets in the business of "Artemis Records" other than his intellectual property. But Goldberg is well known in the music industry and has managed many recording artists while operating various record companies. Furthermore, Goldberg originated the "*ARTEMIS RECORDS*" trademark as part of a distinctive trade style to be used by SSE in connection with its distribution of phonograph records, audio and video cassettes, and audio and video compact disks. Both before and after the assignment, SSE was run by Goldberg, its Chief Executive Officer. Moreover, SSE used the "*ARTEMIS RECORDS*" trademark for the same purposes intended by Goldberg at the time of his trademark application. Thus, Goldberg assigned to SSE both the "*ARTEMIS RECORDS*" trademark and all of

---

[41] *Dial-A-Mattress Operating Corp. v. Mattress Madness, Inc.*, 841 F. Supp. 1339, 1350 (E.D.N.Y. 1994) (parallel citations omitted).

11

the goodwill he generated in that trademark.[42] The assignment is therefore not invalid as an assignment in gross.[43] Upon assignment, Goldberg divested himself of all of his trademark rights in "*ARTEMIS RECORDS*," rights to which SSE succeeded.[44] Accordingly, Goldberg, the assignor, is not liable for any of the alleged infringing acts of SSE, the assignee.[45]

### B. Goldberg Is Not Liable to Plaintiff as a Licensor

Plaintiff disputes that September 1999 is the date SSE first used the "*ARTEMIS RECORDS*" trademark, arguing that SSE actually started using the mark in February 1999, at or about the time Goldberg filed his trademark application. In support of his argument, Fitzpatrick cites paragraph ten of Defendant's Statement of Undisputed Facts, which states: "Defendant Danny

---

[42] Goodwill is transferred where there is a "continuity of management" and where the assignee produces a product substantially similar to that of the assignor. *See Marshak*, 746 F.2d at 930. Both conditions are present here.

[43] *Dial-A-Mattress*, 841 F. Supp. at 1350 (holding that the assignment of the trade name "Dial-A-Mattress" to a corporation already using that name was not invalid as an assignment in gross; assignee had already built up substantial goodwill in the name before the assignment and the assignor had no other assets except its intellectual property at the time of the assignment).

[44] *See Clark & Freeman*, 811 F. Supp at 139 (holding that the assignee "steps into the shoes" of the assignor).

[45] *Champale, Inc. v. Joseph S. Pickett & Sons, Inc.*, 599 F.2d 857, 860 (8th Cir. 1979) (finding no support for an "indirect infringement" claim).

Goldberg did not use the word "Artemis" as part of his trade name, advertising or promotional literature. It was used by defendant Sheridan during the period February 1999 to September 2006."[46] This argument is not persuasive because paragraph ten refers to the word "Artemis" and not the trademark "*ARTEMIS RECORDS*." Moreover, Fitzpatrick offers no evidence of a licensor-licensee relationship between Goldberg and SSE. Thus, whether there was any pre-assignment use of the mark by SSE is of no consequence because there is no legal basis in which to impute such use to Goldberg. Accordingly, Goldberg is not liable as a licensor.

## IV. CONCLUSION

For the foregoing reasons, defendant Goldberg's motion for summary judgment is granted and he is dismissed from this action. The Clerk of the Court is directed to close this motion (Document # 49).

---

[46] Def. Stmt ¶ 10. Despite citing paragraph ten of Defendant's Statement of Undisputed Facts in paragraph nine of his Admission or Denial, Fitzpatrick then denies the facts stated in paragraph ten, arguing that "Sheridan's use is pursuant to its status as licensee to Goldberg and therefore is attributed to Goldberg as the licensor[.]" Admission or Denial ¶ 10.

SO ORDERED:

_____
Shira A. Scheindlin
U.S.D.J.

Dated:     New York, New York
              August 23, 2010

## - Appearances -

**For Plaintiff:**

John Smargiassi, Esq.
Joseph & Smargiassi, LLC
Two Rector Street, 21st Floor
New York, NY 10006
(212) 625-9949

Steven B. Lehat, Esq.
895 Dove Street
Newport Beach, CA 92660
(949) 786-6461

**For Defendant Goldberg:**

Tinamarie Franzoni, Esq.
Meier Franzino & Scher, LLP.
570 Lexington Avenue
New York, NY 10022
(212) 759-9770